UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

EQT PRODUCTION COMPANY,      )
                             )
    Plaintiff,               )    Civil No. 5:16-cv-150-JMH
                             )
v.                           )
                             )
MAGNUM HUNTER PRODUCTION, INC., ) **MEMORANDUM OPINION AND ORDER**
                             )
                             )
    Defendant.               )

\*\*\*\*

This matter is before the Court upon Plaintiff EQT Production Company's Motion in Limine [DE 73], in which it seeks to preclude Defendant Magnum Hunter Production, Inc. from introducing evidence or testimony of the following items: (1) prior settlement negotiations between the parties; (2) other royalty deduction lawsuits to which EQT was a party; (3) actions or conduct of its joint farmor, KRCC; and (4) the parties' course of conduct. Magnum Hunter has filed a Response [DE 79], making this matter ripe for the Court's review. The parties have since submitted Witness Lists, Exhibit Lists and Pretrial Memoranda [DE 81, 82, 83, 84, 85, 86], which implicate many of these same evidentiary issues, in compliance with the Court's Scheduling Order of August 2, 2016 [DE 15].

As for the first of these items, EQT specifically asks the Court to preclude Magnum Hunter from characterizing the claim for

unpaid royalties on natural gas liquids ("NGLs") as a "bargaining chip." [DE 73 at 6]. Such a request is likely moot in light of the Court's decision to grant summary judgment in Magnum Hunter's favor on the NGL claim. While Magnum Hunter concedes that this request is reasonable and indicates that it will not use such language at trial, it also expresses some concern about the scope of EQT's request. Specifically, Magnum Hunter questions whether EQT wishes to preclude Magnum Hunter from introducing evidence or eliciting testimony about communications related to the audit and/or bankruptcy proceeding. [DE 79 at 2-7]. EQT declined to file a Reply, but indicates in its pretrial filings that it too wishes to introduce evidence of such discussions, which would make Magnum Hunter's concerns moot. [DE 84 at 2-4]. However, the Court finds it necessary to make a few observations on this issue.

As a general matter, evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Additionally, Federal Rule of Evidence 408 provides as follows:

> (a) Evidence of the following is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction:
>
> (1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim—except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) The Court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

Both parties indicate that they will introduce evidence about amounts included in the EQT Cash Payment.[11] [DE 84 at 3]. Such evidence likely would not be subject to exclusion under Rule 408 because the parties are not attempting to use settlement discussions regarding the instant claim to prove or disprove the validity or amount of the claim. Rather, they indicate that they

---

[11] Out of an abundance of caution, the Court reiterates that the Confirmation Order did not bar EQT from seeking to recover the full amount stated in the Proof of Claim minus the amount of the EQT Cash Payment. This matter is not open for further discussion.

will use evidence of communications from the bankruptcy proceeding to demonstrate what sums the EQT Cash Payment represented.

Even if such evidence is not excludable under Rule 408, the Court harbors some concerns about its use at trial. In its Memorandum Opinion and Order, the Court declined to make explicit findings about what claims were included in the EQT Cash Payment. However, it did reject Magnum Hunter's contention that the EQT Cash Payment fully disposed of EQT's claim for sums relating to the 2011 to 2013 audit period. The parties will not be permitted to re-litigate the Court's findings pertaining to the EQT Cash Payment by introducing contrary evidence at trial.

The Court also urges the parties to carefully consider the risks and benefits of presenting such evidence. In their respective Motions for Summary Judgment, the parties argued that the EQT Cash Payment represented compensation for certain sums owed by Magnum Hunter. As noted above, Magnum Hunter insisted that the EQT Cash Payment corresponded to the 2011 to 2013 audit exceptions. However, these numbers did not match up and Magnum Hunter failed to provide any evidence that would explain the discrepancy. The Court foresees that the parties will introduce testimony from their corporate representatives about what items were covered by the EQT Cash Payment. While such testimony is certainly relevant, its probative value may be substantially

outweighed by its potential to confuse the issues and mislead the jury. *See* Fed. R. Evid. 403.

The Court questions whether it is truly necessary to burden the jury with conflicting testimony about what the EQT Cash Payment represented and then require them to parse out which of EQT's breach of contract claims have already been satisfied by the aforementioned payment. It may be more efficient to simply explain that EQT received the Cash Payment in partial satisfaction of the amount stated in its Proof of Claim and that the purpose of this lawsuit is to determine whether EQT is entitled to the remainder. EQT would then have the opportunity to introduce evidence relevant to each breach of contract claim and substantiate its request for damages. Magnum Hunter would have the opportunity to counter this proof. The jury would then be left with two simple questions: Has EQT proven breaches of the FOAs? If so, has EQT proven that it suffered damages in excess of the sum it received in the EQT Cash Payment?

As for the audit discussions, such evidence likely falls outside the ambit of Rule 408 because they were not made in furtherance of settlement, but rather in the course of the auditing process. Because the calculation and adjustment of the audit exceptions is relevant to the issues of breach and damages, the

parties will be permitted to introduce evidence of communications made throughout the audit process. See Fed. R. Evid. 401.

EQT also asks the Court to preclude Magnum Hunter from introducing proof of KRCC's involvement in the audit. As explained in the Memorandum Opinion and Order, KRCC and EQT were joint farmors in one of the FOAs that was subject to the audit. Magnum Hunter argues that KRCC's actions and conduct are relevant and admissible because of its status as joint farmor and resulting involvement in the audit. However, the fact that KRCC ultimately chose to accept payment from Magnum Hunter and resume their normal dealings is not relevant or admissible to the question of whether EQT is entitled to damages for breaches of contract. Fed. R. Evid. 401. While the parties will not be required to remove all mention of KRCC from evidence relating to the audit, Magnum Hunter may not rely on any evidence or testimony relating to KRCC's relationship with Magnum Hunter before or after the audit.[2]

Finally, EQT wishes to preclude Magnum Hunter from introducing evidence regarding EQT's involvement in other litigation and evidence of either party's course of conduct.

---

[2] The Court will not require the parties to redact all mention of KRCC from the FOA and Audit Report because such an exercise would confuse the jury because the FOA payment provisions apply to both parties. Without any mention of KRCC, the jury would not be able to understand how payment provisions that applied to both farmors would give rise to the audit exceptions pertaining to EQT alone.

6

Magnum Hunter agrees that this is appropriate and suggests that the Court deny the Motion as moot. While this suggestion is well-taken, the Court finds it necessary to advise the parties on a related issue that neither raised. Specifically, both parties indicate that they will introduce testimony about the relationship between EQT and Magnum Hunter prior to the audit. Particular exchanges between corporate representatives may be useful, but general assertions that the parties enjoyed a productive relationship for years does not have "any tendency to make a fact more or less probable than it would be without the evidence."[3] Fed. R. Evid. 401(a).

In sum, evidence of communications relating to the bankruptcy proceeding and the resulting EQT Cash Payment will not be totally excluded. However, the parties are advised to carefully consider the utility of such evidence. If they choose to introduce it, they must tailor it so that it does not run afoul of issues already decided by this Court or confuse the jury. Evidence of communications related to the audit will be permitted. While the parties are not barred from mentioning KRCC's role in the audit process as joint farmor with EQT, they may not introduce any evidence relating to KRCC's resolution of the exceptions found in the audit or its continuing relationship with Magnum Hunter.

---

[3] The Court encountered several assertions of this kind in handling the parties' Motions for Summary Judgment.

General assertions about the prior state of the parties' relationship will be prohibited. The parties are instructed to review their exhibit and witness lists and cull any evidence that does not comport with these rulings therefrom.

As a final matter, the Court notes that both parties have expressed an intent to request reconsideration of matters that the Court decided in its Memorandum Opinion and Order. For example, EQT indicates that it will continue to argue about the NGL claim, while Magnum Hunter asks the Court to reconsider its ruling on prejudgment interest. [DE 79 at p. 6, n. 6; 84 at p. 1, n. 1]. The parties briefed these issues in great detail, submitted voluminous exhibits in support of their respective positions, and then supplemented those filings. The Court reviewed all of these documents and thoroughly considered each argument before issuing its Memorandum Opinion and Order. Because the Court has already devoted ample time and effort to the adjudication of these issues, and because the trial date is fast approaching, the Court is disinclined to consider any such Motions. Accordingly,

**IT IS ORDERED** that Plaintiff EQT Production Company's Motion in Limine [DE 73] be, and is, hereby **GRANTED IN PART and DENIED IN PART AS MOOT.**

This the 11th day of August, 2017.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge