UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| EQT PRODUCTION COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | Action No. 5:16-cv-150-JMH |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| MAGNUM HUNTER PRODUCTION COMPANY, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*\*

## I. INTRODUCTION

Plaintiff EQT and Defendant Magnum Hunter long worked together in the oil and gas business before things soured. As the market for oil and gas dried up, so too did the prosperous relationship between the parties. The predecessors in interest of EQT and Magnum Hunter had entered into 11 Farmout Agreements ("FOAS") over several years, and those agreements governed the duties and obligations of each party. The meaning and extent of those FOAs has been the focus of this litigation for more than a year. Now, with trial fast approaching, this Court must decide several evidentiary issues raised in trial briefs, objections and responses, and during the final pretrial conference. [DE 91, 95, 97, 99, 100, 106].

For the reasons stated herein, **IT IS ORDERED** that EQT's objections to Magnum Hunter's defenses relating to time-barred claims for the 2002-2010 period and overpayment for the 2011-2013 period are **OVERRULED**. EQT's request for data on FOAs during the 2002-2010 period is **GRANTED IN PART AND DENIED IN PART**. Finally, EQT shall be **PROHIBITED** from seeking damages not listed in its Complaint.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The predecessors in interest of Plaintiff EQT and Defendant Magnum Hunter entered into 11 FOAs between 1996 and 2002 [DE 1, p. 2-5 ¶ 9]. The FOAs allowed Magnum Hunter to drill wells on lands owned or leased by EQT and sell oil and/or gas produced from those wells. [DE 1-1; 1-2; 1-3; 1-4; 1-5; 1-6; 1-7; 1-8; 1-9; 1-10; 1-11]. In exchange, Magnum Hunter agreed to pay EQT a royalty. [DE 1-1, p. 6 ¶ 4A].

After working together for several years, the parties came to disagreements regarding certain deductions, royalties, and other payments made under the FOAs. [DE 1]. EQT filed this lawsuit May 19, 2016 claiming Magnum Hunter breached the FOAs by, among other things, failing to render payment for wells in production, failing to render shut-in royalty payments, failing to escalate royalty or overriding royalty percentages, and making improper royalty deductions. [*Id.*].

During the final pretrial conference, both parties agreed that EQT's claims must be split into three distinct categories: (1) claims arising between 2002 and 2010; (2) claims under the Mercadante Audit period of 2011-2013; and (3) claims after the Mercadante Audit period. [DE 100; 106]. This Memorandum Opinion and Order deals only with issues arising out of the first two categories.

First, the 2002-2010 claims. Throughout this litigation, Magnum Hunter has argued that the FOAs contain language time-barring EQT from bringing these claims. [DE 11, p. 14; 67, p. 9; 86, p. 6, 9-10; 100, p. 2, 7-8]. Of the 11 FOAs, seven attach an exhibit titled "Accounting Procedure Joint Operations." [DE 1-2, p. 50; 1-3, p. 54; 1-4, p. 63; 1-5, p. 62; 1-8, p. 57; 1-9, p. 48; 1-10, p. 40]. This language, adopted from the Council of Petroleum Accountants Societies ("COPAS"), contains a range of provisions relating to payment, audits, and other issues. [*Id.*].

Specifically, each includes an "Adjustments" section that purports to limit when parties can bring claims under the agreement. Five of the FOAs contain an Adjustments section that provides:

> "Payment of any such bills shall not prejudice the right of any Non-Operator to protest or question the correctness thereof; provided, however, all bills and statements rendered to Non-Operators by Operator during any calendar year shall conclusively be presumed to be true and correct after twenty-four (24) months following the end of any such calendar year, unless within the

3

said twenty-four (24) month period a Non-Operator takes written exception thereto and makes claim on Operator for adjustment."

[DE 1-2, p. 50; 1-3, p. 54; 1-4, p. 63; 1-5, p.62; 1-8, p. 57].

Another two FOAs use similar language but exclude "working interest ownership adjustments" from the 24-month requirement. [DE 1-9, p. 49; 1-10, p. 40]. And four FOAs do not attach the COPAS exhibit at all. [DE 1-1; 1-6; 1-7; 1-11].

Magnum Hunter argues that the COPAS provisions prevent EQT from bringing the 2002-2010 claims because EQT did not take written exceptions within 24 months, as the agreements require. [DE 86; 100]. Magnum Hunter does not dispute that EQT did preserve its claims after 2010. [DE 100, p. 3].

In response, EQT argued during the final pretrial conference that the COPAS language does not apply to the claims at issue in this litigation. [DE 106]. EQT also points to this Court's July 19, 2017 Memorandum Opinion and Order ("MOO") in support of its position that Magnum Hunter may not make its time-bar argument. [DE 97, p. 8]. In a footnote, the Court wrote:

> Magnum Hunter also asserts that EQT's claim for damages dating back to 2002 is "time-barred under the contracts themselves (and certainly would also be barred by laches." [DE 67 at 9]. Magnum Hunter does not elaborate on either of these arguments. Although the Court could simply reject Magnum Hunter's assertions for failure to sufficiently develop them, it will make a few brief observations. *See McPherson v. Kelsey*, 125 F.3d 989, 995-6 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at

4

> developed argumentation, are deemed waived" because "[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones").
>
> Kentucky's statute of limitations for breach of contract claims is fifteen years. The Court is not aware of any FOA provision shortening this period. Because the alleged breaches date back to 2002, and because EQT filed suit in 2016, the Court sees no evidence that these claims are time-barred by the applicable statute of limitations.
>
> As for Magnum Hunter's laches argument, Magnum Hunter has not shown prejudice resulting from an unreasonably delay caused by EQT. *See Plaza Condo Ass'n, Inc. v. Wellington Corp.*, 920 S.W.2d 51, 54 (Ky. 1996) (explaining that laches is "an equitable doctrine" that "serves to bar claims in circumstances where a party engages in unreasonable delay to the prejudice of others rendering it inequitable to allow that party to reverse a previous course of action").

[DE 77, P. 21-22, n. 16].

According to EQT, this footnote precludes Magnum Hunter from arguing EQT's claims are time-barred. [DE 97, p. 7-8]. Magnum Hunter disagrees and asks the Court to prohibit EQT from pursuing its 2002-2010 claims altogether. [DE 100, p. 2-3]. In the alternative, Magnum Hunter plans to raise a laches defense, which EQT also claims the Court prohibited in the above footnote. [DE 97, p. 7-8].

Second, the 2011-2013 Mercadante Audit Claims. The Mercadante Audit report lists seven exceptions that Magnum Hunter purportedly owed EQT. [DE 1-14]. The total of all seven exceptions is $2,367,307. [*Id.*]. Magnum Hunter takes issue, however, with the

amounts listed in Exception 5 and Exception 6. Specifically, Magnum Hunter argues EQT failed to list Exception 5 in its Complaint and has since offered no proof to support the amount. [DE 1; 100, p. 3]. Second, Magnum Hunter seeks to argue that part of Exception 6 —more than $600,000 — was calculated based on natural gas liquids ("NGLs"), a topic that this Court ruled is not at issue in this case. [DE 77].

Without Exception 5 and part of Exception 6, the total owed under the Audit period would be reduced by hundreds of thousands of dollars. This is important to Magnum Hunter because, among other reasons, it already voluntarily paid $1,833,780 to EQT (the "Cash Payment") as part of a previous bankruptcy proceeding. [DE 1, p. 7 ¶ 23a; 1-13, p. 59-60]. According to Magnum Hunter, the Cash Payment exceeds the amount it actually owed EQT for the Mercadante period. Thus, Magnum Hunter argues it is entitled to a credit amounting to the difference.

EQT objects. [DE 97, p. 7]. EQT first argues that the amount listed in Exception 5 was included in the total amount sought in the Complaint. [DE 106]. Second, EQT argues that Magnum Hunter should be prohibited from seeking a credit since Magnum Hunter "never identified those amounts nor produced any documents supporting such a claim." [DE 97, p. 7]. Thus, EQT argues the Court should prohibit any offset claim [*Id*.]. The Court will address each of these objections and arguments in turn.

## III. ANALYSIS

*2002-2010 Claims*

"Where the parties execute a written instrument, an unambiguous written contract, 'will be enforced strictly according to its terms,'" *Journey Acquisition-II, L.P. v. EQT Prod. Co.*, 39 F. Supp. 3d 877, 887 (E.D. Ky. 2014). "Kentucky courts have held that parties may contract for a shorter limitations period for bringing a lawsuit" and "such contractual reductions typically apply where the contract specifically addresses lawsuits or legal causes of action." *Id*. at 888. "[I]t is not contrary to public policy for parties to contract for a reasonably shorter period than that fixed by statute." *Johnson v. Calvert Fire Ins. Co.*, 183 S.W.2d 941, 943 (Ky. Ct. App. 1944). "Parties are at liberty to contract for a limitation period less than the period fixed by statute." *Munday v. Mayfair Diagnostic Lab.*, 831 S.W.2d 912, 914 (Ky. 1992).

The COPAS exhibits in the FOAs demonstrate an intent to limit when the parties can bring claims. Parties are free to do so under Kentucky law. *See id*. EQT and Magnum Hunter in fact did so under seven of the 11 FOAs, which require that the non-operator *make a claim* for adjustment within 24 months. [DE 1-2, p. 50; 1-3, p. 54; 1-4, p. 63; 1-5, p. 62; 1-8, p. 57; 1-9, p. 48; 1-10, p. 40]. Of those seven FOAs, however, two contain exceptions to the 24-month

7

requirement for claims relating to "working interest ownership adjustments." [DE 1-9, p. 49; 1-10, p. 40]. Another four do not attach the COPAS provisions at all. [DE 1-1; 1-6; 1-7; 1-11].

Thus, five FOAs limit the time to bring claims without exception. As such, EQT will be prohibited at trial from seeking damages on those contracts for the years 2002-2010. [DE 1-2; 1-3; 1-4; 1-5; 1-8]. As for the two FOAs with exceptions for a working interest ownership adjustment, EQT may argue at trial that such an exception applies, and Magnum Hunter may rebut those arguments [DE 1-9; 1-10]. Finally, EQT remains free to seek damages on the four FOAs that have no limit on time to bring claims. [DE 1-1; 1-6; 1-7; 1-11]. Pursuant to the Court's ruling during the pretrial conference, Magnum Hunter shall provide EQT the data it has requested on the six FOAs still at issue from 2002-2010. [DE 1-1; 1-6; 1-7; 1-9; 1-10; 1-11].

This Court's July 19 MOO does not save EQT's position. There, the Court made a "few brief observations" in a footnote about the statute of limitations and laches; it did not rule that Magnum Hunter could not rely on the plain language in the parties' agreements. [DE 77, p. 21-22, n. 16]. The Court's July 19 MOO also does not prevent Magnum Hunter from making a laches defense during trial.

*Mercadante Audit Claims*

In its July 19 MOO, this Court ruled NGL payments did not fall under the FOAs. [DE 77]. Yet, Magnum Hunter argued during the pretrial conference that claims brought under the Mercadante Audit period contain amounts calculated using NGLs. [DE 106]. Specifically, according to Magnum Hunter, the Audit report uses NGLs as part of the $1,768,451 listed in Exception 6. Magnum Hunter argues it does not owe this amount since the FOAs do not contemplate NGLs. [DE 77].

EQT has conceded in several documents that part of the bankruptcy Proof of Claim ("POC") and Mercadante Audit were based on "underpayment for the sale of natural gas liquids." [DE 1, p. 6 ¶ 19]. Because Magnum Hunter does not owe EQT for NGLs, Magnum Hunter is entitled to offset for any NGL payments it made to EQT on these claims.

As for the $381,000 listed in Exception 5 of the Audit, EQT never included this in its Complaint. [DE 1]. The total amount EQT did claim in its Complaint -- $5,896,907 -- came directly from the POC. [DE 1, p. 6 ¶ 19]. And the POC, which EQT attached to its Complaint, specifically includes the Mercadante exceptions as a basis for some of EQT's claims. [DE 1-12]. But the $381,000 from Exception 5 on the Mercadante Audit was nowhere on the POC and nowhere in the Complaint. [DE 1; 1-12]. Instead, the POC and the Complaint list a sum of $176,805 related to Exception 5. [DE 1, p.

9

13 ¶ 59; 1-12]. Because EQT never asserted a claim for the $381,000 in Exception 5, it cannot now do so at trial.

Magnum Hunter wishes to argue that its Cash Payment satisfied all of the Mercadante Audit claims. [DE 100, p. 3]. Indeed, without the $381,000 listed in Exception 5 and the $607,000 from NGLs included in Exception 6, Magnum Hunter may have already satisfied EQT's claims for payment during this period. Despite EQT's objections, Magnum Hunter may make this argument at trial. EQT may not seek recovery of any amounts from NGLs, and it may not seek recovery of $381,000 that was not listed in its Complaint.

## IV. CONCLUSION

For the reasons stated herein,

**IT IS ORDERED** as follows:

(1) EQT's objection to Magnum Hunter's defense that EQT's claims from the 2002-2010 period are time-barred [DE 97, p. 7-8] is **OVERRULED**. In addition, FOAs requiring parties to bring claims within 24 months are **EXCLUDED** for the 2002-2010 time period. [DE 1-2; 1-3; 1-4; 1-5; 1-8]. Magnum Hunter will be permitted to make a laches defense as to the other FOAs for this time period.

(2) EQT's request for data on FOAs during the 2002-2010 period is **GRANTED IN PART AND DENIED IN PART**. For the

10

FOAs not excluded by this order, Magnum Hunter must supply information to EQT.

(3) EQT's objection to Magnum Hunter's defense of overpayment [DE 97, p. 7] is **OVERRULED**. Magnum Hunter may argue it is entitled to credit for overpayment during the Mercadante Audit period.

(4) EQT shall be **PROHIBITED** from seeking any damages amount not listed in its Complaint.

This the 31st day of August, 2017.

Signed By:
*Joseph M. Hood*
Senior U.S. District Judge